UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In Re: ) | Bankruptcy Case No. 10-33445 |
| ) | Chapter 11 |
| GREATER SALEM CHURCH, ) | |
| ) | **AMENDED** |
| ) | **DISCLOSURE STATEMENT** |
| Debtor. ) | |

TO:  THE CREDITORS AND OTHER PARTIES IN INTEREST

I. INTRODUCTION

On November 19, 2010, Greater Salem Church (hereinafter sometimes referred to as the "Debtor" or "Debtor-In-Possession"), a North Carolina non-profit corporation, filed a voluntary petition for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code (the "Code") with the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division (the "Court").

The Debtor provides this Amended Disclosure Statement ("Disclosure Statement") to all of its known creditors in order to disclose that information deemed by the Debtor to be material, important and necessary for its creditors to arrive at a reasonably informed decision in exercising their right to vote for the acceptance of the Amended Plan of Reorganization (the "Plan") presently on file with the Bankruptcy Court. A copy of the Plan accompanies this Disclosure Statement marked as Exhibit A, and should be considered an integral portion of this Disclosure Statement.

Approval by the Court of this Disclosure Statement constitutes neither approval nor disapproval by the Court of the Debtor's Amended Plan of Reorganization ("Plan").

Accompanying this Disclosure Statement and Plan is an important notice concerning a hearing to consider confirmation of the Plan and creditors' right to vote on the acceptance or rejection of the Plan. As a creditor, your vote is important. The Plan can be confirmed by the Court if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the Class rejecting it.

No representations concerning the Debtor, particularly as to its future operations, value of property, or other values set forth herein, are authorized by the Debtor other than as set forth herein. Any representations or inducements made to secure your acceptance that are other than as contained in this statement should not be relied on by you in arriving at your decisions. Any such additional representations and inducements should be reported to

counsel for the Debtor, who in turn shall deliver such information to the Bankruptcy Court for such action as may be deemed appropriate.

The information contained in this Disclosure Statement has not been subjected to a certified audit. The Debtor's records are accurate to the Debtor's best knowledge and information, and every reasonable effort has been made to present accurate figures.

## II. THE DEBTOR

### A. Background and General Nature of the Business

History of the Debtor

The Debtor is a nonprofit Christian Church that was founded in 1874. It originally was a Baptist Church. It left the Baptist denomination in 1998. It is now affiliated with Kingdom Fellowship Covenant Ministries. The Debtor has approximately 300 members.

The Debtor maintains its religious functions at 5318 Salem Church Road, Charlotte, North Carolina ("Home Church"). It owns four other parcels of real property. These are a cemetery located at 826-830 Woodland Avenue, Charlotte, North Carolina, a small dwelling house located adjacent to the cemetery, a church building located at 17609 Old Statesville Road, Huntersville, North Carolina ("Lake Church") and approximately 51 acres of undeveloped land located in the 6400-6700 block on North Rozzell's Ferry Road, Charlotte, North Carolina ("Acreage"). The Acreage and the Lake Church were bought for the purposes of expansion.

### B. Events Leading to Filing

In February, 1981, Anthony Jinwright ("Jinwright") became the pastor of the Debtor. Over a period of time, a faction of the Debtor's membership, who believed in lavishly compensating Jinwright and his wife, Harriett, gained ascendency. This compensation grew to the point that the legitimate debts of the Debtor were not being paid. Among the obligations that were not paid was the obligation owed to Evangelical Christian Credit Union ("ECCU"). This obligation was secured by the Home Church, the Lake Church and the acreage. The obligation of ECCU became past due, and ECCU instituted a foreclosure action. The Debtor filed this case to stop the foreclosure.

### C. Appointment of the Chief Restructuring Officer

At the time of filing, the Debtor was in financial turmoil. As a result of this situation, the Court appointed Robert Weld as Chief Restructuring Officer ("CRO") for the purpose of gaining control of the Debtor's finances. The CRO continues to oversee the Debtor's finances and will do so until the first payment under the Plan on the Effective Date of the Plan is made at which time the CRO will file a final report and seek an order from the Bankruptcy Court relieving him of his office and any further duties.

## III. FINANCIAL INFORMATION

### A. Creditor's Claims

Attached hereto and marked Exhibit B is a list of the Debtor's creditors. There will be a separate "Objection to Claims and Recommendations for Allowance of Claims" filed with the Court. Exhibit B reflects those claims in the amounts and categories as recommended for allowance by the Debtor. It does not reflect any claims objected to by the Debtor. The actual claims against the estate, as allowed by the Court, may increase significantly the amount of obligations outstanding. All parties in interest should carefully compare Exhibit B to the Objections to Claims and Recommendations for Allowance of Claims as filed by the Debtor. Except when objected to by the Debtor, claims listed in Exhibit B are in the amounts stated in the proofs of claim, if any, filed by creditors with the Court, within the 90 day filing period which commenced on the date of the first scheduled creditors meeting on the date of filing. Where no proof of claim was filed, the claims are listed in the amounts scheduled by the Debtor when the petition was filed. Exhibit B takes into account the fact that the Debtor has paid certain pre-petition debts, in whole or in part, and the Debtor reserves the right to file objections at a later date.

### B. Assets

1. Real Property.

   a. *Home Church.* This property is the church building used by the congregation of the Debtor for its services and other functions. The property is located at 5318 Salem Church Road, Charlotte, North Carolina. It consists of approximately three acres and contains a church building of approximately 20,000 square feet.

   b. *Acreage.* This property consists of approximately 51 acres of undeveloped land that is zoned I-2 for general industrial purposes. The property is located in the 6400-6700 block of North Rozzell's Ferry Road, Charlotte, North Carolina.

   c. *Lake Church.* This property consists of a church building that was formerly used as a satellite church by the Debtor. The property is located at 17609 Old Statesville Road, Huntersville, North Carolina. It consists of approximately four acres and contains a church building of approximately 36,000 square feet. The property is currently leased to two different entities. These are as follows:

      i. Phoenix Montessori Academy ("Academy"). The Academy pays $9,400 per month rent and reimburses the Debtor for 75% of the utilities.

      ii. Latin Church. The Latin Church pays $800 per month rent and reimburses the Debtor for ten (10%) percent of the utilities

2. Valuation of Real Property

The Debtor has caused the Home Church, Lake Church, and Acreage to be appraised by Integra Realty Resources ("Appraiser"). By appraisals made in June, 2011, the Appraiser valued the properties as follows:

| a. | Home Church | $1,180,000 |
| b. | Lake Church | $1,960,000 |
| c. | Acreage | $1,990,000 |

As to the value of the cemetery and the adjacent dwelling, the Debtor believes that theses have negligble, if any, value.

3.   Personal Property.

The Debtor's personal property consists of office furniture, office equipment, class room furniture, musical instruments, recording equipment, four vans, congregation and sanctuary equipment, and the like. The Debtor believes that this property has a liquidation value of under $50,000. In addition, the law firm of Mitchell & Culp, PLLC is holding the sum of $32,276.91 in trust for the benefit of the Debtor.

### C. Post-Petition Debts and Taxes

With the exception of professional fees, all post-petition debts have been paid as they were incurred. Professional fees continue to accrue.

## IV. SUMMARY OF PLAN OF REORGANIZATION

### A. Classification and Treatment of Claims

Attached hereto as Exhibit A is a copy of the Plan of Reorganization. Article I of the Plan provides for the creation of five classes of claims. It also explains what payment each class shall receive. The following is a summary of Article I of the Plan:

Class 1:   Expenses of Administration except as set out below shall be assumed by the reorganized Debtor and paid in full on the effective date of the Plan, or otherwise in accordance with such agreement as the Debtor and the respective claimant may reach.

Class 2:   The claim of ECCU is secured with duly perfected deeds of trust securing a debt in the amount of approximately $5,150,000. The real property securing this obligation is the Home Church, the Lake Church, and the Acreage. This obligation will be paid and satisfied as follows:

a.   The Debtor will execute deeds transferring ownership of the Lake Church and the Acreage to ECCU on the Effective Date of the Plan, and

4

      b.      The Debtor will retain ownership of the Home Church and will pay to ECCU in consideration thereof the sum of $1,300,000. The amount that will be paid will be paid in fifty-nine equal monthly payments together with interest at the rate of six percent per annum (6%) based on a twenty year amortization with the balance remaining due and payable in full on the due date of payment number sixty. These payments shall begin on the Effective Date of the Plan.

      Class 3:      Claims of the Internal Revenue Service for secured and priority unsecured taxes shall be paid in full on a pro-rata basis with interest at the rate of six percent (6%) per annum in sixty equal payments. Post-petition interest shall accrue from August 1, 2011. The first payment shall be made on the effective date of the plan, and each payment thereafter will be made on the first day of each following month. The Internal Revenue Service shall have the right to take any action to enforce collection that is authorized by law in the event that a payment is not made within forty-five days of the date upon which it is due.

      Class 4:      Allowed non-priority unsecured claims other than the claim of Stan Latham shall be paid in full through twenty quarterly payments without interest beginning on the Effective Date of the Plan and continuing thereafter on the first day of each month three months following the preceding payment.

      Class 5:      The allowed non-priority unsecured claim of Stan Latham shall be paid in full without interest by crediting the amount of $450.00 per month following the Effective Date of the Plan to the amount of the claim on account of rent on real property owned by the Debtor which the claimant occupies.

### B. Means for Funding the Plan

      The funds necessary for the satisfaction of creditor's claims will be derived from the normal financial activities of a not for profit church which primarily consists of the collection of tithes and contributions from members, other attendees, and outside parties. The funds necessary to pay the cost of administration shall be raised by a fund drive specifically designated for this purpose prior to the Effective Date of the Plan.

### V. RISKS

The risks inherent in this reorganization plan are those normally faced by any non-profit, which are:

      Size of the Membership
- General Economic Factors Effecting Members
- High Interest Rates
- Increase in the Cost of Materials and Supplies
- Employee Problems
- Building Maintenance and Repairs

The Debtor has analyzed these factors with respect to its current operations and has made the necessary operating changes that will allow it to cope effectively with these variables.

## VI. CHURCH GOVERNANCE AND COMPENSATION

The Debtor is governed by a Board of Directors who serve without compensation. The members of the Board of Directors are set out on <u>Exhibit C</u> attached hereto.

The pastor is Bishop Alan G. Porter. Bishop Porter is compensated at the rate of $75,000 per annum (Salary $57,000 and housing allowance $18,000).

## VII. EFFECT OF FAILURE TO CONFIRM PLAN

Acceptance is necessary for confirmation of the Plan. If the Plan is accepted, the Debtor will pay a significant amount to each class of creditors. If the Plan is not accepted, the Debtor will be forced to convert to a Chapter 7 bankruptcy case. Chapter 7 means that the church will be closed and the assets liquidated. The Debtor believes that in liquidation, the creditors holding security would be entitled to virtually all of the proceeds of liquidation. (In the event there were any funds available after the secured creditors are satisfied, these funds would be paid on a pro-rata basis <u>only</u> to Administrative creditors.)

## IX. ELEMENTS OF CONFIRMATION

In addition to understanding the background of this Chapter 11 case, as well as the events which led to the filing of the Chapter 11 petition and the events which have occurred during the Chapter 11, it is also important of the creditors to have some understanding of the statutory requirements for the confirmation of the Plan.

However, it is important for each creditor to understand that this is merely a summary of important provisions of the law and that each creditor should consult counsel for legal advice.

Basically, in this Chapter 11 reorganization, the Debtor believes that it can provide more for the creditors than they would receive in the Chapter 7 liquidation. The Law requires that Chapter 11 plans classify creditors and, as outlined above, the Debtor has in this case established five classes in its Plan.

Once the classes are established according to the nature of the claims in each class, the Law provides certain priorities of payment. These priorities are also set forth in the outline in this Disclosure Statement.

There are eleven basic requirements which are described in section 1129(a) of the Code for confirmation of a Chapter 11 Plan, briefly summarized as follows:

1. The Plan must have complied with the general requirements of Chapter 11; for example, classification of claims must have been proper.

2. The proponent of the Plan must have complied with the applicable provisions of Chapter 11; for example, preparing a Disclosure Statement like this prior to soliciting acceptances.

3. The Plan must have been proposed in good faith and not by any means forbidden by law.

4. All payments for services or expenses with respect to the Plan in the case must have been disclosed to the Court, and these payments must be reasonable and are, in any event, subject to Court approval.

5. There must have been full disclosure with respect to the identities of the various parties involved.

6. Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor must approve any rate change provided for in the Plan, or such rate change must be expressly conditioned upon such approval.

7. Each holder of a claim in each class have either accepted the Plan or must receive under the Plan property having a value not less than what it would have been entitled to receive if the Debtor liquidated under Chapter 7 of the Code.

8. Each class must have accepted the Plan or must be unimpaired by the Plan.

9. The administrative claims and priority claims must be paid in full under the Plan, unless the claimants agree to a different treatment of the claims.

10. If a class of claims is impaired under the Plan, at least one class of claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider.

11. Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (B) are met with respect to a Plan, the Court, on request of the proponent of the Plan, shall confirm the Plan notwithstanding the requirements of such paragraph if the Plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interest that is impaired under and has not accepted the Plan. This is the well-known "Cramdown" which the Court can require. However, when a "Cramdown" is requested, the Court will follow what is known as the

7

"Absolute Priority" rule, which essentially means that no junior class of claimants may receive any property until the members of a dissenting senior class of claimants have received the full amount of their claims.

## X. CONCLUSION

The Debtor believes acceptance of this Plan is in the best interest of the creditors.

A VOTE OF ACCEPTANCE IS IMPORTANT. CLAIMANTS SHOULD VOTE PROMPTLY.

This the 16 day of August, 2011..

Greater Salem Church

By: _____
Executive Board Member

By: _____
Executive Board Member

_____
Richard M. Mitchell, NC State Bar No. 3034
Attorney for Debtor

OF COUNSEL:

Mitchell & Culp, PLLC
1001 Morehead Square Drive, Suite 330
Charlotte, North Carolina 28203
Tel: 704-333-0630
Fax: 704-333-4874
E-mail: rmitchell@mitchellculp.com

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In Re: ) | Bankruptcy Case No.: 10-33445 |
| ) | Chapter 11 |
| GREATER SALEM CHURCH, ) | |
| ) | **AMENDED** |
| Debtor.  ) | **PLAN OF REORGANIZATION** |

Greater Salem Church, hereafter referred to as the "Debtor", the Debtor-in-Possession, in this case proposes the following Plan of Reorganization:

## ARTICLE I: DIVISION INTO CLASSES AND TREATMENT OF CLASSES

The Plan provides for the creation of five classes of claims. The classes and the treatment of creditors in these classes are as follows:

Class 1:    Expenses of Administration except as set out below shall be assumed by the reorganized Debtor and paid in full on the effective date of the Plan, or otherwise in accordance with such agreement as the Debtor and the respective claimant may reach.

Class 2:    The claim of ECCU is secured with duly perfected deeds of trust securing a debt in the amount of approximately $5,150,000. The real property securing this obligation is the Home Church, the Lake Church, and the Acreage as these terms are defined in the Disclosure Statement filed by the Debtor. This obligation will be paid and satisfied as follows:

    a.    The Debtor will execute deeds transferring ownership of the Lake Church and the Acreage to ECCU on the Effective Date of the Plan, and

    b.    The Debtor will retain ownership of the Home Church and will pay to ECCU in consideration thereof the sum of $1,300,000. The amount that will be paid will be paid in fifty-nine equal monthly payments together with interest at the rate of six percent per annum (6%) based on a twenty year amortization with the balance remaining due and payable in full on the due date of payment number sixty. These payments shall begin on the Effective Date of the Plan.

Class 3:    Claims of the Internal Revenue Service for secured and priority unsecured taxes shall be paid in full on a pro-rata basis with interest at the rate of six percent (6%) per annum in sixty equal payments. Post-petition interest shall accrue from August 1, 2011. The first payment shall be made on the effective date of the plan, and each payment thereafter will be made on the first day of each following month. The Internal Revenue Service shall have the right to take any action to enforce collection that is authorized by law in the event that a payment is not made within forty-five days of the date upon which it is due.


Exhibit A

Class 4: Allowed non-priority unsecured claims other than the claim of Stan Latham shall be paid in full through twenty quarterly payments without interest beginning on the Effective Date of the Plan and continuing thereafter on the first day of each month three months following the preceding payment.

Class 5: The allowed non-priority unsecured claim of Stan Latham shall be paid in full without interest by crediting the amount of $450.00 per month following the Effective Date of the Plan to the amount of the claim on account of rent on real property owned by the Debtor which the claimant occupies.

## ARTICLE II: CLASSES IMPAIRED BY THE PLAN

Classes 2, 3, 4 and 5 are impaired by the Plan.

## ARTICLE III: MEANS FOR PERFORMING THE PLAN

The funds necessary for the satisfaction of creditor's claims will be derived from the normal financial activities of a not for profit church which primarily consists of the collection of tithes and contributions from members, other attendees, and outside parties. The funds necessary to pay the cost of administration shall be raised by a fund drive specifically designated for this purpose prior to the Effective Date of the Plan.

## ARTICLE IV: EFFECTIVE DATE OF THE PLAN

The Effective Date of the Plan shall be the first day of the first full calendar month following the date upon which the order confirming the plan becomes final and non-appealable.

## ARTICLE V: DISCHARGE

When the Plan is confirmed, the Debtor will be discharged of all those debts, which are dischargeable under the Bankruptcy Code, 11 U.S.C. § 1141. However, the Debtor will be obligated to pay debts as provided for in the Plan.

## ARTICLE VI: RETENTION OF JURISDICTION

The Court shall retain jurisdiction after confirmation of the Plan: (a) to consider (and reconsider if appropriate) claims and objections thereto: (b) to fix expenses of administration and compensation therefore; (c) to hear and determine any dispute arising under or relating to the Plan or arising under or relating to this Chapter 11 reorganization case; (d) to enforce all discharge provisions of the Plan; and (e) to make such orders and directions pursuant to the Bankruptcy Code, 11 U.S.C. §§ 1127 and 1142, as may be necessary or appropriate.

This the ___ day of August, 2011.

GREATER SALEM CHURCH


By:_____
Executive Board Member



By:_____
Executive Board Member



_____
Richard M. Mitchell
Attorney for the Debtor
MITCHELL & CULP, PLLC
1001 Morehead Square Drive, Suite 330
Charlotte, North Carolina 28203
Tel: (704) 333-0630
Fax: (704) 333-4975
Email: rmitchell@mitchellculp.com

3

## Greater Salem Church Claims

| | | Amount | Status |
|---|---|---|---|
| Sch | A & E Property Upkeep | $5,257.00 | Unsecured |
| Sch | BP Fleet | $4,723.29 | Unsecured |
| 3 | Charlotte Observer | $922.50 | Unsecured |
| Sch | Chevron Fleet | $2,378.64 | Object-Not owed |
| Sch | Church Mutual Insurance | $16,118.00 | Object-Not owed |
| Sch | FP Mailing Solutions | $140 | Object-Not owed |
| Sch | Holmes Property Management | $1,890 | Object to $300. Allow $1,590 |
| 1 | Lifeway Ridgecrest Conference Ctr | $5,008.38 | Object to $1,607.58. Allow $3,400.80 |
| Sch | MCI, Inc. | $927.22 | Object to $240.39. Allow $686.83 |
| 4 | Robert Imperial | $5,128,814.53 | Secured-Not owed |
| Sch | Shell Oil | $4,368.38 | Object-Not owed |
| Sch | Sherrill & Emehel | $18,000.00 | Unsecured |
| Sch | 1-800-Pack Rat | $171.84 | Unsecured |
| Sch | Robert Half International | $9,596.46 | Unsecured |
| Sch | Ikon Office Solutions | $3,322.76 | Unsecured |
| Sch | Simplex Grinnell | $355.28 | Unsecured |
| Sch | Stan Latham | $1,084.92 | Unsecured |
| Sch | Dr. Ramona Joseph | $7,000 | Unsecured |
| 2 | Internal Revenue Service | 25,050.20 | Secured-Allow |
| | " " " | 3,645.16 | Priority Tax-Allow |
| | " " " | 3,395.31 | Unsecured-Allow |
| Sch | Prudential | $263,554.43 | Object-Secured-look to collateral |
| Sch | Prudential | $142,774.15 | Object-Secured-look to collateral |

Exhibit B



*Bishop Alan G. Porter*
*Senior Pastor*

# Board Of Directors
## for Greater Salem Church
### June 4, 2011

**BISHOP ALAN G. PORTER**
*Chairman of the Board*
240.432.0346
BishopPorter@greatersalem.org

**PAT BUFORD**
704.621.8211
pbuford@bellsouth.net

**ANTHONY BYRD**
704.400.7546
tempostr@yahoo.com

**PAMELA EATMON**
704.519.7183
pseatmon65@hotmail.com

**LOLITA GAINES**
704.519.7400
gaines3742@bellsouth.net

**PIERETTE HAYES**
704.231.7735
pmhollingsworth@bellsouth.net

**PAUL HOLMES**
Executive Committee Member
704.577.0619
TEG4ph@aol.com

**SHEILA JOHNSON**
Vice Chairman of Executive Committee
704.904.5706
sj28208@aol.com

**DENNIS LEE**
Executive Committee Member
704.606.5613
dkl5613@att.net

**SHELIA LITTLE**
Executive Committee Member
704.564.4717
shelia.little@duke-energy.com

**ANGELIA J. POOLE**
*Recording Secretary*
980.200.0439
apoole@greatersalem.org

**TRE'VANT RICHARDSON**
Executive Committee Member
704.858.1767
trevant@gmail.com

**W. TERRY SHERRILL**
*Corporate Secretary*
Chairman of Executive Committee
704.905.1871
wterrysherrill@aol.com

5318 Salem Church Road . Charlotte, NC 28216 . Phone: 704.399.5448 ; Fax: 704.392.3670 | www.greatersalemchurch.org



Exhibit C